CLERKS OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED
4/11/18
JULIA C. DUDLEY, CLERK
BY: s/ K. DOTSON
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Roanoke Division

| | | |
|---|---|---|
| BRAD FAVER, | ) | |
|    Plaintiff, | ) | Civil Action No. 7:16cv00287 |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| HAROLD CLARKE, | ) | By:   Joel C. Hoppe |
|    Defendant. | ) | United States Magistrate Judge |

Plaintiff Brad Faver is an orthodox Sunni Muslim inmate incarcerated within the Virginia Department of Corrections ("VDOC"). Faver contends in this lawsuit that Defendant Harold Clarke, the VDOC's Director, violated his rights under the First Amendment to the United States Constitution and the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), 42 U.S.C. § 2000cc-1 et seq., by implementing certain policies that substantially burden Faver's religious beliefs and practices. Compl. 1–4, ECF No. 1; Mem. Op. 1–2, ECF No. 45. In particular, he alleges "that VDOC Operating Procedure (OP) 864.1 prohibits him from growing a fist-length beard; OP 802.1 requires him to acquire his perfumed oils from Keefe Commissary (Keefe), which 'sells swine and idols'; and the VDOC does not offer a diet that is consistent with his 'religious scruples,'" Mem. Op. 2, because its Common Fare menu does not include "meat that is 'ritually slaughtered in the name of Allah,'" *id.* at 13. *See* Compl. 2–4, 6. On September 29, 2017, United States District Judge Elizabeth K. Dillon entered an Order granting Clarke's motion for summary judgment "as to Faver's First Amendment claims and Faver's claims for damages against Clarke in his official capacity and under RLUIPA," but denying the motion "as to Faver's RLUIPA beard, prayer oils, and diet claims." Order on Summ. J. Mots. ¶ 3, ECF No. 46. Faver's RLUIPA claims for equitable relief against Clarke in his official capacity are set for a bench trial.

1

The matter is currently before the Court on Faver's Motion under Rule 60(b)(6) of the Federal Rules of Civil Procedure. ECF No. 50. Faver, who was representing himself when he filed this motion, seeks relief from two Orders entered by Judge Dillon on September 29, 2017.[1] *See* Pl.'s Mot. 1–2, 5, 10–11 (citing Order Den. Pl.'s Mot. to Compel Disc. ¶¶ 2, 5, ECF No. 44; Order on Summ. J. Mots. ¶ 3). First, he asks the Court to reconsider the portion of Judge Dillon's Order granting Clarke summary judgment on the merits of all three of Faver's First Amendment free-exercise claims and to reinstate those claims for trial. *Id.* at 2–4, 5–7, 8–10, 11. Second, Faver objects to Judge Dillon's Order denying his requests that Clarke (1) "admit to certain facts concerning policies Clarke imposed or enforced when [he] worked in other jurisdictions," and (2) produce "all reports of prisoners concealing contraband in their beards" and "all reports of infractions for beard related gang association." Order Den. Pl.'s Mot. to Compel Disc. ¶¶ 2, 5; *see* Pl.'s Mot. 1–2. After Faver filed this motion, counsel entered an appearance in this case on Faver's behalf. ECF No. 60. On April 3, 2018, Faver's counsel moved to continue the bench trial and to extend discovery. ECF No. 64.

I. Standard of Review

Although Faver's motion is styled as one seeking relief from a final order under Rule 60(b), the orders he asks the Court to reconsider are actually "interlocutory one[s] under Rule 54(b)," *Gentry v. Hyundai Motor Am., Inc.*, No. 3:13cv30, 2017 WL 1289050, at *1 (W.D. Va. Apr. 6, 2017), because Judge Dillon's rulings resolved "fewer than all the claims" in this action, Fed. R. Civ. P. 54(b). *See, e.g.*, *Murphy v. Inmate Sys.*, 112 F. App'x 882, 883 (4th Cir. 2004) (per curiam) (order denying motion to compel discovery); *Am. Canoe Ass'n v. Murphy Farms,*

---

[1] Judge Dillon subsequently transferred the case to me under 28 U.S.C. § 636(c)(1). Order of Mar. 22, 2018, ECF No. 58; *see* Consent to Jurisdiction of U.S. Magistrate Judge, ECF No. 57.

2

*Inc.*, 326 F.3d 505, 514 (4th Cir. 2003) (order granting partial summary judgment). "Motions for reconsideration of interlocutory orders are not subject to the strict standards applicable to motions for reconsideration of a final judgment" or final order under Rule 60(b), *Am. Canoe Ass'n*, 326 F.3d at 514, because interlocutory orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities," Fed. R. Civ. P. 54(b). *See Fayetteville Inv'rs v. Commercial Builders, Inc.*, 936 F.2d 1462, 1469–70, 1472–74 (4th Cir. 1991). Accordingly, the Court will evaluate Faver's pro se motion under Rule 54(b), and not Rule 60(b)(6). *See Castro v. United States*, 540 U.S. 375, 381–82 (2003); *Appalachian Power Co. v. Nissen*, No. 7:14cv535, 2015 WL 1538809, at *1 (W.D. Va. Apr. 7, 2015).

Rule 54(b) gives a district court "flexibility to revise interlocutory orders before final judgment as the litigation develops and new facts or arguments come to light." *Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (emphasis omitted). But the court's discretion "is not limitless," *id.*, and "[s]uch motions . . . should be granted sparingly," *Wootten v. Commonwealth of Va.*, 168 F. Supp. 3d 890, 893 (W.D. Va. 2016) (quotation marks omitted). Relief under Rule 54(b) may be appropriate where the moving party shows that the Court "patently misunderstood a party" in reaching its decision, there has been "a controlling or significant change in the law or facts" since the Court issued its order, *Above the Belt, Inc. v. Mel Bohannan Roofing, Inc.*, 99 F.R.D. 99, 101 (E.D. Va. 1983), or "the prior decision was clearly erroneous and would work manifest injustice" if allowed to stand, *Am. Canoe Ass'n*, 326 F.3d at 515 (quotation marks omitted). *See Wootten*, 168 F. Supp. 3d at 893 (citing the same factors). "[R]econsideration is not meant to re-litigate issues already decided, provide a party the chance to craft new or improved legal positions, highlight previously-available facts, or otherwise award a proverbial 'second bite at the apple' to a dissatisfied litigant." *Id.*

II. Discussion

*A.     First Amendment Claims*

"The Free Exercise Clause of the First Amendment forbids the adoption of laws designed to suppress religious beliefs or practices," including correctional policies intended to limit incarcerated persons' religious practices. *Wall v. Wade*, 741 F.3d 492, 498 (4th Cir. 2014). "However, a neutral and generally applicable policy that substantially burdens an inmate's sincere religious exercise is constitutional if it is 'reasonably adapted to achieving a legitimate penological' interest." *Snodgrass v. Robinson*, No. 7:14cv269, 2015 WL 4743986, at *12 (W.D. Va. Aug. 10, 2015) (quoting *Wall*, 741 F.3d at 499). In other words, the Free Exercise Clause allows prison officials to restrict inmates' "religious practices subject to a 'reasonableness' test that accords substantial deference to the professional judgment of correctional officers." *Wall*, 741 F.3d at 499 (citing *Overton v. Bazzetta*, 539 U.S. 126, 132 (2003)).

As Judge Dillon explained in her Memorandum Opinion, the VDOC policies that Faver challenges in this lawsuit are "reasonable and thus [constitutionally] permissible," *id.*, if they satisfy the four factors outlined in *Turner v. Safley*, 482 U.S. 78 (1987). *See* Mem. Op. 4–5, 8–9, 11–12, 15–16. The *Turner* test asks:

> (1) whether there is a "valid, rational connection" between the prison regulation or action and the interest asserted by the government, or whether this interest is "so remote as to render the policy arbitrary or irrational"; (2) whether "alternative means of exercising the right . . . remain open to prison inmates," an inquiry that asks broadly whether inmates were deprived of all forms of religious exercise or whether they were able to participate in other observances of their faith; (3) what impact the desired accommodation would have on security staff, inmates, and the allocation of prison resources; and (4) whether there exist any "obvious, easy alternatives" to the challenged regulation or action, which may suggest that it is "not reasonable, but is instead an exaggerated response to prison concerns."

4

*Lovelace v. Lee*, 472 F.3d 174, 200 (4th Cir. 2006) (brackets omitted) (quoting *Turner*, 482 U.S. at 89–92). "The prisoner carries the burden of proof under the *Turner* [test] to disprove the validity of the prison regulation at issue." Mem. Op. 5 (citing *Overton*, 539 U.S. at 132).

In order for Faver's constitutional free-exercise claims to survive Clarke's motion for summary judgment, Faver had to produce evidence that, when viewed in his favor as the non-moving party, could persuade a reasonable jury that the challenged VDOC policy (1) "substantially burdens" Faver's "sincerely held religious belief," and (2) is not "reasonably related to a legitimate penological interest." Mem. Op. 2, 4–5; *see* Fed. R. Civ. P. 56(c), (e). As to the first element, Judge Dillon found there was "no dispute" that the VDOC's grooming policy substantially burdens Faver's sincere religious belief that he must maintain a fist-length beard and there was at least "a genuine dispute" of material fact whether the VDOC's single-vendor policy and Common Fare diet substantially burdens Faver's sincere religious beliefs or practices. Mem. Op. 8, 11, 15. Judge Dillon then explained that Faver's constitutional claims faltered on the second element because, after weighing the *Turner* factors and considering Faver's arguments and the available evidence, it was clear Faver had failed to "disprove[] the validity" of any of the challenged policies. *See id.* at 6–9, 10–12, 13–16. Accordingly, Judge Dillon concluded that there was no genuine dispute whether the VDOC policies were reasonably related to a legitimate penological interest and Clarke was entitled to judgment as a matter of law on the merits of Faver's First Amendment claims.[2] *Id.* at 2, 9, 11–12, 15–16.

Faver's pro se motion to reconsider, in which he points to evidence already in the record and repeats arguments Judge Dillon specifically rejected in explaining why Faver had not

---

[2] Conversely, Judge Dillon concluded that Clarke was not entitled to summary judgment on the merits of Faver's parallel RLUIPA claims because Clarke had not produced sufficient evidence to show the challenged policies are "the least restrictive means of achieving" the VDOC's compelling governmental interests. *See generally* Mem. Op. 9–10, 12–13, 16–17.

5

disproven the policies' validity, essentially seeks to relitigate Clarke's summary judgment motion as to Faver's First Amendment claims. *See* Pl.'s Mot. 2–4, 5–7, 8–11; Mem. Op. 8–9, 11–12, 15–16. Faver does not suggest that the Court "patently misunderstood" his position on summary judgment, or point to "a controlling or significant change in the law or facts," *Above the Belt, Inc.*, 99 F.R.D. at 101, since the Court issued its earlier order. *See generally* Pl.'s Mot. 2–11. Nor does he suggest that the "prior decision was clearly erroneous and would work manifest injustice" if allowed to stand, *Am. Canoe Ass'n*, 326 F.3d at 515. On the contrary, Faver in effect urges the Court to disregard binding legal authority and reinstate his First Amendment free-exercise claims using the "more searching standard of review," *Lovelace*, 472 F.3d at 186, applicable to his parallel RLUIPA claims. *See generally* Pl.'s Mot. 2–10 (discussing RLUIPA's legislative history and Judge Dillon's analysis of the RLUIPA claims in urging the Court to find on reconsideration that Faver carried his burden to show the challenged VDOC policies are not "rationally" or "reasonably" related to a "legitimate penological goal").

Faver argues that a reasonable jury could conclude the challenged VDOC policies are unconstitutional because Clarke already makes exceptions to those policies, or because the VDOC could use less restrictive means to achieve its stated penological goals. *See* Pl.'s Mot. 2–4 (asserting that "Clarke is already purchasing the halal meat" that Faver wants added to the daily Common Fare menu and noting that the VDOC makes menu accommodations for inmates with food-related allergies and for Jewish inmates during Passover), 5–7 (arguing that Clarke does not enforce the VDOC's "<u>alleged</u> 'single-vendor' policy" because "Jewish inmates are allowed to purchase 'Passover' packages from an outside vendor," and "other inmates at the same prison [as Faver] are allowed" to purchase prayer oils from vendors other than Keefe), 8–10 (discussing *Holt v. Hobbs*, 135 S. Ct. 853 (2015), and objecting that "Clarke has offered no persuasive

6

reason why he believes that he must take a different course from the overwhelming majority of well-run prisons that allow prisoners to grow beards" longer than one-quarter of an inch).[3] Faver pointed to many of the same examples in an effort show on summary judgment that there were "obvious, easy alternatives" to the challenged policies. *See, e.g.*, Mem. Op. 8 (acknowledging

---

[3] Faver's reliance on *Holt* merits a bit more discussion. *Holt* involved a devout Muslim inmate who wanted to grow a one-half-inch beard in accordance with his religious beliefs. 135 S. Ct. at 859. Holt's "objection to shaving his beard clash[ed] with the Arkansas Department of Correction's grooming policy, which prohibit[ed] inmates from growing beards unless they ha[d] a particular dermatological condition." *Id.* Inmates with the diagnosed dermatological condition could wear a one-quarter-inch beard. *Id.* at 860. Holt challenged Arkansas's no-beard policy under RLUIPA, arguing that officials' refusal to let him grow a one-half-inch beard imposed a substantial burden on his sincere religious exercise because he faced "serious disciplinary action" if he contravened the grooming policy. *Id.* at 862–63. The district court eventually dismissed the action for failure to state a claim upon which relief could be granted, *id.* at 861, in part because the Magistrate Judge and the District Judge both mistakenly "thought that they were bound to defer to the Department's assertion that allowing [Holt] to grow such a beard would undermine its interest in suppressing contraband." *Id.* at 864. The U.S. Court of Appeals for the Eighth Circuit affirmed the district court's decision "in a brief *per curiam* opinion, holding that the Department had satisfied its burden of showing that the grooming policy was the least restrictive means of furthering its compelling security interest." *Id.* at 861. Much like the district court, however, the Eighth Circuit mistakenly afforded the Department's explanation "a degree of deference that [was] tantamount to unquestioning acceptance" in holding the Department had shown that forbidding Holt to grow a very short beard satisfied RLUIPA's "exceptionally demanding" least-restrictive-means standard. *See id.* at 864. The Supreme Court unanimously reversed the Eighth Circuit's decision and remanded the case for further proceedings. The justices "readily agree[d]" that the Arkansas DOC had compelling interests "in staunching the flow of contraband into and within its facilities," *id.* at 863, and "in the quick and reliable identification of prisoners," *id.* at 864. Based on the evidentiary record before the Court, however, it was clear the Department had failed to prove *in Mr. Holt's case* that banning all beards (except as medically necessary) was the least restrictive means of achieving those goals. *Id.* at 864–67 (discussing the evidence presented in the district court, and repeatedly noting that the Department "failed to show, in the face of [Holt's] evidence," that it could not implement a less restrictive grooming policy); *see also id.* at 867 (Sotomayor, J., concurring) (joining the Court's opinion with the understanding that the decision "holds that the Department failed to show why the less restrictive alternatives identified by [Holt] in the course of this litigation were inadequate to achieve the Department's compelling security-related interests").

Contrary to Faver's assertion in his motion to reconsider, *Holt* does not hold "that a ¼ in[ch] beard policy violates RLUIPA" in all cases. Pl.'s Mot. 9; *see Holt*, 135 S. Ct. at 866–67. Nor does it follow from *Holt* that Faver "has stated *a First Amendment claim* for a ½ in[ch] beard" in this case—let alone the "fist-length beard" that Faver wants to grow—because the Supreme Court found the Arkansas DOC's proffered justifications for its near-categorical ban on beards "wanting" under RLUIPA. Pl.'s Mot. 9. (emphasis added). Rather, *Holt* reaffirms that RLUIPA "provide[s] greater protection for religious exercise than is available under the First Amendment," 135 S. Ct. at 859–60, and clarifies that RLUIPA requires the government "not merely to explain why it denied" the plaintiff-prisoner an exemption from a policy or practice that substantially burdens his sincere religious exercise, "but to prove that denying the exemption is the least restrictive means of furthering a compelling governmental interest," *id.* at 864.

7

Faver's suggestion that the VDOC's beard policy is unconstitutional because "forty other states and the Federal Bureau of Prisons allow longer beards"), 12 (noting that Faver submitted "an affidavit from a vendor who states that she sells 'correctional friendly' prayer oils to correctional facilities in Virginia and other states" to show there was an "obvious, easy" alternative to VDOC's single-vendor policy), 16 (summarizing Faver's argument "that 'Halal chicken franks' are already served on the Master Menu; thus, there is 'no reason' not to allow Faver to eat them"). As Judge Dillon's opinion made clear, however, the existence of potential alternatives is only "one of four factors used to evaluate the constitutional reasonableness of prison regulations," *Wright v. Lassiter*, 633 F. App'x 150, 151 (4th Cir. 2016) (per curiam) (citing *Turner*, 482 U.S. at 89–91). *See generally* Mem. Op. 8–9, 11–12, 15–16 (weighing the *Turner* factors with respect to each policy and explaining why Faver failed to disprove that policy's validity).

Unlike RLUIPA, the Federal Constitution requires the VDOC to fashion policies that are only reasonably related to a legitimate penological interest—it does not require that the VDOC "should use less restrictive means to achieve its desired goals" whenever practicable. *Hines v. S.C. Dep't of Corrs.*, 148 F.3d 353, 358 (4th Cir. 1998); *see Jehovah v. Clarke*, 798 F.3d 169, 176 (4th Cir. 2015) ("RLUIPA provides more stringent protection of prisoners' free exercise rights than does the First Amendment, applying 'strict scrutiny instead of reasonableness.'" (quoting *Lovelace*, 472 F.3d at 186)). As Judge Dillon explained, *Turner* and its progeny "established a rational relation test," *Hines*, 148 F.3d at 358, that puts the burden "on the prisoner to disprove" the validity of the challenged policy, taking into account all of the relevant factors and keeping in mind that federal courts "must accord substantial deference to the professional judgment of prison administrators[] who bear a significant responsibility for defining the

8

legitimate goals of a corrections system and for determining the most appropriate means to accomplish them," *Overton*, 539 U.S. at 132 (collecting cases). *See generally* Mem. Op. 4–5, 8–9, 11–12, 15–16. Faver's Motion does not provide any reason to disturb the Court's conclusion that he failed to carry this burden on summary judgment. *See Appalachian Power Co.*, 2015 WL 1538809, at *1.

*B.    Discovery Requests*

In an Order entered on September 29, 2017, Judge Dillon denied Faver's motion to compel various discovery responses because Faver failed to demonstrate that the requested discovery was "relevant to the adjudication of his claims or proportional to the needs of the case." Order Den. Pl.'s Mot. to Compel Disc. ¶¶ 2, 5 (citing Fed. R. Civ. P. 26(b)(1), 33(a)(2)). In his motion to reconsider, Faver asks that the Court require Clarke to respond to discovery requests concerning Clarke's implementation of grooming policies at prisons prior to his tenure with the VDOC, and he asks for reports regarding prisoners concealing contraband in their beards or using beards to convey gang association. Pl.'s Mot. 2. The Court will deny these requests without prejudice. As noted above, Faver is now represented by counsel, and his counsel has moved to continue the bench trial and extend discovery. The Court understands that Clarke, through counsel, does not object to the request for a continuance. To allow counsel time to conduct discovery and prepare for trial, I find that a continuance of the bench trial is warranted. I do not agree, however, that discovery should be reopened for 180 days, as Faver's counsel suggests. The Court will hold a conference with the parties to discuss discovery and re-scheduling the bench trial.

Accordingly, it is hereby ORDERED that:

1. Faver's motion for reconsideration, ECF No. 50, is DENIED as to his request to reinstitute his First Amendment claims, and DENIED WITHOUT PREJUDICE as to his request for discovery.

2. Faver's motion to continue the trial and extend discovery, ECF No. 64, is GRANTED.

3. The Court will hold a conference with the parties to discuss discovery and rescheduling the bench trial.

ENTER: April 11, 2018

Joel C. Hoppe
U.S. Magistrate Judge